PILLSBURY WINTHROP SHAW PITTMAN LLP
Edward Flanders
1540 Broadway
New York, NY 10036
edward.flanders@pillsburylaw.com

*Attorneys for Petitioners*



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SCHRODER FUND ADVISORS LLC and JASON BARGER,<br><br>Petitioners,<br><br>v.<br><br>JORGE GUTIERREZ,<br><br>Respondent. | 14CV4746<br><br>Civ. Action No. |

### PETITION TO VACATE ARBITRATION AWARD

Petitioners Schroder Fund Advisors LLC ("Schroder") and Jason Barger (collectively "Petitioners"), by and through undersigned counsel, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, hereby petition this Honorable Court to vacate the Arbitration Award to Respondent, Jorge Gutierrez, entered June 13, 2014 (the "Award"), by a three-member arbitration panel (the "Panel") in an arbitration forum sponsored by the Financial Industry Regulatory Authority ("FINRA"), Case No. 13-00793. The law of tortious interference requires that the alleged interference be done for the sole purpose to harm; that there be a protected business relationship; and that the interference be direct without any intervening cause. Mr. Gutierrez failed to establish any of these requirements. The Award in favor of Respondent was therefore entered in manifest disregard of the law.

## THE PARTIES

1. Petitioner Schroder Fund Advisors LLC is a limited liability company organized under the laws of Delaware, and is registered with FINRA as a limited purpose broker-dealer, with a principal place of business located at 875 Third Avenue, 22nd Floor, New York, New York, 10022.

2. Petitioner Jason Barger is an associated person of Schroder and an employee of Schroder's parent corporation, Schroder Investment Management North America Inc. ("SIMNA"). Mr. Barger is a citizen of Connecticut.

3. Respondent Jorge Gutierrez is a former associated person of Schroder and a former employee of SIMNA. Mr. Gutierrez is a citizen of Florida.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## RELEVANT FACTS AND PROCEDURAL HISTORY

6. After only four months of employment, Mr. Gutierrez resigned from SIMNA in April 2012 and returned to work for his former employer. Pursuant to Schroder's policy, Mr. Gutierrez's Schroder email account remained open, and emails received at that Schroder email address were forwarded to Mr. Gutierrez's former supervisor, Mr. Barger.

7. In November 2012, Mr. Barger was forwarded an email addressed to Mr. Gutierrez's still-active Schroder email address.

8. On its face, the email appeared to described a commercially-sensitive matter affecting a significant Schroder client; a client shared by Mr. Gutierrez's then current employer. Mr. Barger believed that Schroder's client would want to receive that important commercial information and forwarded the email to one of his contacts at the client.

9. In a series of subsequent, third-party events related to the email received and forwarded by Mr. Barger, Mr. Gutierrez was permitted to resign from his new job in December 2012.

10. On March 14, 2013, Mr. Gutierrez filed a Statement of Claim for arbitration against Petitioners in a FINRA arbitration forum. As an associated person of a broker-dealer, Mr. Gutierrez made use of that forum. Mr. Barger is also an associated person of a broker-dealer, and Schroder's business requires that it be registered with FINRA as a limited purpose broker-dealer.

11. The Statement of Claim alleges that, by simply forwarding the email, Petitioners "for the *sole* purpose of inflicting intentional harm on Gutierrez" tortiously interfered with Mr. Gutierrez's professional relationships with his employer and with his client. In an obvious effort to inflame and bias the Panel, Mr. Gutierrez also made irrelevant and unsubstantiated allegations that Mr. Barger had made unprofessional and racially-insensitive comments directed at Mr. Gutierrez.

12. In their various pre-hearing filings, Petitioners consistently informed the Panel that Mr. Gutierrez was required to prove that Petitioners acted, as Mr. Gutierrez has alleged, with the "sole" purpose to harm.

13. A hearing was held from April 22 through April 25, 2014.

14. During the hearing, Petitioners established that they had legitimate, reasonable business reasons for forwarding the email to their client. Conversely, Mr. Gutierrez failed to establish that Petitioners acted with any – let alone a sole – motive to harm Mr. Gutierrez.

15. During both opening and closing arguments, Petitioners again made it clear that the law required Petitioners to have acted with the sole purpose to harm Mr. Gutierrez. The existence of any business purpose for the alleged interference means there is no legal basis for a claim of tortious interference.

16. The hearing concluded with Mr. Gutierrez's closing arguments[1], during which Mr. Gutierrez first submitted his request and analysis of damages. Two days later, Petitioners submitted a response to Mr. Gutierrez's damages analysis. Mr. Gutierrez objected, and the Panel requested that both parties submit post-hearing briefs.

17. In their post-hearing brief, Petitioners explained that Mr. Gutierrez had failed to establish a legal basis for his claims of tortious interference for three primary reasons. First, Petitioners had legitimate business purposes to forward the email and did not act with any purpose – let alone the "sole" purpose – of harming Mr. Gutierrez. Second, Mr. Gutierrez lacked a protected business relationship with his client. Third, Petitioners did not directly interfere with Mr. Gutierrez's employment relationship.

18. As to the first reason, Petitioners explained to the Panel that, in the absence of a crime or independent tort, tortious interference requires proof that Petitioners acted with the sole purpose of harming Mr. Gutierrez. *See In re Standard Jury Instructions in Civil Cases*, 35 So. 3d 666, 749 (Fla. 2010) ("one who interferes *only out of spite, or to do injury to others* . . . has no justification, and the interference is improper") (emphasis added); *Ethyl Corp. v. Balter*, 386 So.

---

[1] FINRA procedures permit claimants to reserve the entirety of their closing arguments for rebuttal.

2d 1220, 1226 (Fla. Dist. Ct. App. 1980) ("solely" out of malice); *Rosenbaum v. Becker & Poliakoff, P.A.*, No. 08-81004-civ, 2010 WL 376309, at *4-5 (S.D. Fla. Jan. 26, 2010) ("solely with ulterior purposes"). It is indisputable that Petitioners' alleged act was neither a crime nor an independent tort; Mr. Gutierrez's claim rested on Petitioners' alleged motives. However, as long as Petitioners had some purpose to advance their own business or financial interests, there could be no cause of action for tortious interference. *See Jury Instructions*, 35 So. 3d at 749 ("A person who interferes with the business relations of another with the motive and purpose, *at least in part*, to advance [or protect] [his] [her] [its] own [business] [or] [financial] interests, does *not* interfere with an improper motive.") (emphasis added); *Ethyl Corp.*, 386 So. 2d at 1225 (actions to promote one's own interests are "entirely non-actionable" and it is "irrelevant" if the defendant also harbors some ill will toward the plaintiff).

19. Mr. Barger testified that took the actions he did because he believed Schroder's business relationships would be impacted. Mr. Gutierrez presented no documentary or testimonial evidence that Petitioners were motivated even in part by malice, let alone solely by malice.

20. As to the second reason, Petitioners explained to the Panel that tortious interference requires proof of a protected business relationship, which "must afford the plaintiff existing or prospective legal or contractual rights." *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1995); *see In re Maxxim Med. Grp., Inc.*, 434 B.R. 660, 689 (Bankr. M.D. Fla. 2010).

21. As a matter of law, Mr. Gutierrez had no legal or contractual rights because of his relationship with a client. Mr. Gutierrez's "speculative hope of future business is not sufficient

5

to sustain the tort of interference with a business relationship." *Maxxim*, 434 B.R. at 689; *see Ethan Allen*, 647 So. 2d at 815.

22. As to the third reason, Petitioners explained to the Panel that tortious interference requires direct interference with a specific intent to interfere. *See Ethyl Corp.*, 386 So. 2d at 1223-24 (failed to meet requirements because defendant did not "interfere directly" or even communicate until after alleged interference); *Chi. Title Ins. Co. v. Alday-Donalson Title Co. of Fla., Inc.*, 832 So. 2d 810, 814 (Fla. Dist. Ct. App. 2002) ("manifested a specific intent to interfere with the business relationship" and "intended to procure a breach").

23. It is undisputed that Petitioners had no contact with Mr. Gutierrez's employer, and there was no evidence that Petitioners had a specific intent or any intent to interfere with Mr. Gutierrez's employment relationship. Moreover, the business decision by Mr. Gutierrez's then employer with respect to its at-will employee was an intervening cause of the alleged interference. *See Jury Instructions*, 35 So. 3d at 746 (act that is not "probable" is an intervening cause).

24. On June 13, 2014, despite the complete lack of any legal basis for Mr. Gutierrez's claims, the Panel issued the Award in favor of Mr. Gutierrez.

25. In the Award, the Panel found Petitioners liable for "tortious interference with business and *personal* relationships" and awarded damages on that basis. *Id.* at 2 (emphasis added). There is no recognized tort of tortious interference with personal relationships, nor did Mr. Gutierrez ever allege one. The Panel therefore compounded its error by basing its Award on a "tort" that does not exist in law.

26. Having disregarded the law of tortious interference, the Panel awarded a damage amount for which there is no discernable basis in the evidence that was before the Panel.

27. The Panel also assessed filing fees, member fees, discovery-related motion fees, and hearing session fees to Petitioners but denied Mr. Gutierrez's requests for punitive damages and attorneys' fees.

## VACATUR OF AWARD BECAUSE THE PANEL ACTED IN MANIFEST DISREGARD OF THE LAW
## 9 U.S.C. § 10

28. Petitioners repeat and incorporate by reference the allegations contained in paragraphs 1 through 27 as though fully set forth herein.

29. Under the Federal Arbitration Act, a federal district court may vacate an arbitration award where the award is made in manifest disregard of the law. *Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*, 548 F.3d 85, 94-95 (2d Cir. 2008), *rev'd on other grounds*, 559 U.S. 662 (2010); *see* 9 U.S.C. § 10.

30. An award is made in manifest disregard of the law when (1) the law was clear and plainly applicable to the matter, (2) the law was improperly applied leading to an erroneous outcome, and (3) the arbitrators had knowledge of the law's existence and applicability. *Stolt-Nielsen*, 548 F.3d at 93.

31. First, the law was clear and plainly applicable to the matter. Under Florida law, Mr. Gutierrez was required to prove that Petitioners acted solely with the purpose of harming Mr. Gutierrez. Mr. Gutierrez was also required to prove the existence of a protected business relationship and direct interference with a protected business relationship by Petitioners.

32. Second, the law was improperly applied leading to an erroneous outcome. Because Mr. Gutierrez failed to satisfy the clear legal requirements of a cause of action for tortious interference, the Panel had no basis for its Award. The Panel's award of damages in part

based on "tortious interference with personal relationships" – a cause of action not recognized in any jurisdiction – further shows that the Panel improperly applied the law.

33. Third, the arbitrators had knowledge of the law's existence and applicability. The Petitioners clearly explained the applicable law in prehearing filings on May 20, 2013, September 3, 2013, and March 13, 2014; during opening and closing arguments; in their initial response to Mr. Gutierrez's request for damages; and in Petitioners' post-hearing brief regarding damages. The Panel had knowledge of the law's requirements from the very beginning of the case, when Mr. Gutierrez, in recognition of the required elements of tortious interference, alleged that Petitioners acted "for the sole purpose of inflicting international harm on Gutierrez."

34. Accordingly, the Panel issued the Award in manifest disregard of the law and the Court should vacate the Award.

WHEREFORE, Petitioners respectfully request that the Court vacate the Panel's Award.

Dated: June 26, 2014

Pillsbury Winthrop Shaw Pittman LLP

_____
Edward Flanders
1540 Broadway
New York, NY 10036
edward.flanders@pillsburylaw.com

*Attorneys for Petitioners*